**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. ______________________**

| | |
|---|---|
| **EDGAR HOWARD BOLES, III,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**DANIEL GETACHEW ZELEKE and ROBIN TAYLOR BELK,**<br><br>**Defendants.** | **COMPLAINT** |

Plaintiff Edgar Howard Boles, III, complaining of Defendants Daniel Getachew Zeleke and Robin Taylor Belk (collectively, "Defendants"), alleges and says as follows:

**Parties, Jurisdiction, and Venue**

1. Edgar Howard Boles, III ("Ted" or "Plaintiff") is an adult citizen and resident of the State of Illinois.

2. Upon information and belief, Defendant Daniel Getachew Zeleke ("Mr. Zeleke") is an adult citizen and resident of Cabarrus County, North Carolina.

3. Upon information and belief, Defendant Robin Taylor Belk ("Ms. Belk") is an adult citizen and resident of Mecklenburg County, North Carolina.

4. Jurisdiction is proper pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over Defendants because Defendants reside here, undertook tortious conduct in this federal district that harmed Plaintiff, and have sufficient minimum contacts with and in this federal district.

6. Venue is proper in this federal district pursuant to 28 U.S.C. §§ 1391(b)(2) and (b)(3) because a substantial part of the events or omissions giving rise to Plaintiff’s claims occurred in this federal district and all Defendants are subject to the Court’s personal jurisdiction in this action.

## Factual Allegations

7. On May 22, 2025, Ted was riding in the rear passenger seat of an Uber vehicle driven by Mr. Zeleke while traveling from work at Atrium Health Mercy Hospital in Charlotte, North Carolina.

8. Mr. Zeleke was operating a 2024 Toyota (the "Toyota") in the course of providing the ride to Ted. Upon information and belief, Mr. Zeleke was engaged in providing services for and in conjunction with Uber at all times relevant herein.

9. Ms. Belk was operating a 2012 Volvo (the "Volvo") on Randolph Road in Charlotte, North Carolina.

10. At approximately 8:05 p.m., the Toyota and the Volvo approached the intersection of Randolph Road and South Chase Street in Mecklenburg County.

11. As Mr. Zeleke attempted to cross Randolph Road from South Chase Street, he failed to yield the right of way to traffic traveling on Randolph Road.

12. At the same time, Ms. Belk failed to reduce the speed of the Volvo as she approached the intersection and the Toyota.

13. The vehicles collided, with the impact striking the passenger side of the Toyota between the front and rear passenger doors, near where Ted was seated.

14. Ted was properly restrained, was not operating either vehicle, and had no ability to avoid or prevent the collision.

15. The negligent acts and omissions of Mr. Zeleke and Ms. Belk combined and concurred to cause the collision and Ted's resulting injuries and losses.

16. As a direct and proximate result of the collision, Ted suffered serious and debilitating injuries to his left hand and fingers, as well as injuries and pain involving his head and ribs.

17. Immediately following the collision, Ted presented to Novant Health Presbyterian Medical Center, where imaging revealed a displaced intra-articular fracture involving the base of the middle phalanx of his left ring finger and the proximal interphalangeal joint, together with additional injury to his left hand and fingers.

18. Ted's wedding ring had to be cut from his injured and swollen finger. An attempted reduction was unsuccessful, his hand was splinted, and he was prescribed narcotic pain medication.

19. On May 23, 2025, Ted was evaluated at OrthoCarolina. Additional imaging confirmed the displaced ring-finger fracture and other hand injuries, and surgical repair was recommended.

20. On June 2, 2025, Ted underwent open reduction and internal fixation of the intra-articular fracture and fracture-dislocation of the proximal interphalangeal joint of his left ring finger.

21. Following surgery, Ted underwent extensive occupational therapy over many months, including range-of-motion exercises, strengthening, stretching, manual therapy, neuromuscular re-education, and functional training.

22. Despite surgery and extensive therapy, Ted continues to experience pain, stiffness, swelling, restricted range of motion, diminished grip strength, sensory complaints, and difficulty with fine motor and grasping activities.

23. Ted has developed posttraumatic arthritis, tendon adhesions, capsulitis, weakness, and a persistent deformity and flexion contracture involving the left ring finger. It is likely that Ted will require  additional future surgery, including joint release and tenolysis and, potentially, fusion or joint replacement.

24. As a direct and proximate result of the collision, Ted has endured and continues to endure significant physical pain, emotional distress, inconvenience, impairment, and a substantial reduction in his quality and enjoyment of life.

25. At the time of the collision, Ted worked as a Certified Registered Nurse Anesthetist. His work required steady and precise use of his hands for fine manipulation, firm grasping, intravenous-line placement, intubation, airway management, administration of anesthesia, placement of access lines, and other complex clinical procedures.

26. Because of his injuries, Ted was unable to work for a substantial period and has been unable to resume the full range, acuity, hours, pace, and physical demands of his pre-collision work. He has been limited primarily to part-time and lower-acuity work and has suffered substantial lost income and a significant reduction in his earning capacity.

27. As a direct and proximate result of Defendants' negligence, Ted has incurred and continues to incur expenses for medical examination, surgery, rehabilitation, therapy, medication, care, and treatment.

28. Ted has also sustained additional economic losses resulting from the collision and his injuries, including the loss and replacement of his wedding ring and non-refundable travel and vacation expenses he could not use because of the collision, surgery, and resulting medical restrictions.

29. Ted is informed, believes, and alleges that the collision caused permanent injury and disability to his left hand and that he will require future medical care and treatment.

30. As a direct and proximate result of Defendants' negligence, Ted has suffered damages in an amount to be proven at trial and believed to exceed $75,000.00.

## FIRST CAUSE OF ACTION
**[Negligence Against Defendant Zeleke]**

31. Plaintiff repeats and realleges the factual allegations set forth in the paragraphs above.

32. At all times pertinent to this Complaint, Mr. Zeleke owed a duty of reasonable care to Ted and to all other vehicle operators and passengers in and near the intersection.

33. Mr. Zeleke breached his duty of care in a negligent manner, as evidenced by at least the following:

a. He failed to yield the right of way to vehicles traveling on Randolph Road;

b. He failed to keep and maintain a reasonable, careful, and proper lookout in his direction of travel;

c. He failed to maintain proper control of the Toyota;

d. He entered and proceeded through the intersection without first determining that the movement could be made safely;

e. He failed to take into account the roadway, traffic, and intersection conditions then existing;

f. He failed to operate the Toyota in a manner that would permit him to avoid a collision with the Volvo;

g. He operated the Toyota without due caution and circumspection and in disregard of the safety of Ted and others using the roadway;

h. He failed to exercise the degree of care that a reasonable and prudent driver would have exercised under the same or similar circumstances; and

i. He otherwise operated the Toyota negligently and in violation of applicable North Carolina motor-vehicle laws and regulations.

34. The negligent acts and omissions of Mr. Zeleke were a direct and proximate cause of the collision and Ted's resulting injuries and damages.

35. Mr. Zeleke's negligence combined and concurred with the negligence of Ms. Belk to produce a single, indivisible injury to Ted.

36. As a direct and proximate result of Mr. Zeleke's negligence, Plaintiff has suffered damages in an amount to be proven at trial and believed to exceed $75,000.00.

## <u>SECOND CAUSE OF ACTION</u>
## [Negligence Against Defendant Belk]

37. Plaintiff repeats and realleges the factual allegations set forth in the paragraphs above.

38. At all times pertinent to this Complaint, Ms. Belk owed a duty of reasonable care to Ted and to all other vehicle operators and passengers in and near the intersection.

39. Ms. Belk breached her duty of care in a negligent manner, as evidenced by at least the following:

a. She failed to reduce the speed of the Volvo as she approached the intersection and the Toyota;

b. She failed to keep and maintain a reasonable, careful, and proper lookout in her direction of travel;

c. She failed to maintain proper control of the Volvo;

d. She operated the Volvo at a speed that was not reasonable and prudent under the conditions then existing;

e. She failed to take timely and reasonable evasive action to avoid the collision;

f. She failed to take into account the roadway, traffic, and intersection conditions then existing;

g. She failed to exercise the degree of care that a reasonable and prudent driver would have exercised under the same or similar circumstances; and

h. She otherwise operated the Volvo negligently and in violation of applicable North Carolina motor-vehicle laws and regulations.

40. The negligent acts and omissions of Ms. Belk were a direct and proximate cause of the collision and Ted's resulting injuries and damages.

41. Ms. Belk's negligence combined and concurred with the negligence of Mr. Zeleke to produce a single, indivisible injury to Ted.

42. As a direct and proximate result of Ms. Belk's negligence, Plaintiff has suffered damages in an amount to be proven at trial and believed to exceed $75,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

1. That he have and recover from Defendants, jointly and severally, an amount exceeding $75,000.00 as compensation for his bodily injuries, past and future medical expenses, lost income, diminished earning capacity, pain and suffering, permanent impairment, loss of enjoyment of life, other economic losses, and all other damages recoverable by law;

2. For the recovery of his reasonable attorneys' fees to the fullest extent permitted by applicable law;

3. For the recovery of his costs incurred incidental to the prosecution of this litigation;

4. For prejudgment and post-judgment interest as allowed by law;

5. That he have and recover any and all other relief to which he may be entitled by the matters alleged herein;

6. For a trial by jury; and

7. For all other relief, both legal and equitable, which the Court deems just and proper.

This the 9TH day of September, 2026.

**JAMES, McELROY & DIEHL, P.A.**

***/s/ J. Alexander Heroy***
J. Alexander Heroy, NC State Bar No. 39752
525 N. Tryon Street, Suite 700
Charlotte, NC 28202
Telephone: (704) 372-9870
Facsimile: (704) 333-5508
Email: aheroy@jmdlaw.com
*Attorneys for Plaintiff*